G. Mark Albright
Nevada Bar No. 1394
William H. Stoddard, Jr.
Nevada Bar No. 8679
Albright, Stoddard, Warnick and Albright
801 S Rancho Dr D4, Las Vegas, NV 89106
Phone: (702) 384-7111
Fax: (702) 384-0605
Email: gma@albrightstoddard.com
Email: bstoddard@albrightstoddard.com
*Attorneys for Plaintiff*

*See Signature Page for Additional Counsel*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| W. A. SOKOLOWSKI, Individually and On Behalf of LAS VEGAS SANDS CORP., <br><br> Plaintiff, <br><br> v. <br><br> SHELDON G. ADELSON, MICHAEL A. LEVEN, JASON N. ADER, IRWIN CHAFETZ, CHARLES D. FORMAN, GEORGE P. KOO, CHARLES A. KOPPELMAN, JEFFREY H. SCHWARTZ, VICTOR CHALTIEL, IRWIN A. SIEGEL, and FREDERICK HIPWELL, <br><br> Defendants, <br><br> - and - <br><br> LAS VEGAS SANDS CORP., A Nevada Corporation, <br><br> Nominal Defendant. | Civil Action No. 2:14-cv-00111-JCM-NJK <br><br><br> **ERRATA TO** <br> **VERIFIED SHAREHOLDER** <br> **DERIVATIVE COMPLAINT** <br><br><br><br> **JURY DEMAND** |

1

Attached is Exhibit A to the Verified Shareholder Derivative Complaint filed herein on January 23, 2014, which exhibit was inadvertently not attached to the Complaint at the time of filing.

DATED this 23rd day of January, 2014.

ALBRIGHT, STODDARD, WARNICK
AND ALBRIGHT

_____
G. Mark Albright
Nevada Bar No. 1394
William H. Stoddard, Jr.
Nevada Bar No. 8679
801 S Rancho Dr D4, Las Vegas, NV 89106
(702) 384-7111
Fax: (702) 384-0605
Email: gma@albrightstoddard.com
Email: bstoddard@albrightstoddard.com

Richard D. Greenfield
Ilene F. Brookler
Marguerite R. Goodman
GREENFIELD & GOODMAN, LLC
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: 917-495-4446
ibrookler@gmail.com
whitehatrdg@earthlink.net
twowhitehats@earthlink.net

Rose F. Luzon
Valerie Chang
SHEPHERD, FINKELMAN,
MILLER & SHAH, LLP
401 West A Street, Suite 2350
San Diego, CA 92101
Telephone: (619) 235-2416
rluzon@sfmslaw.com
vchang@sfmslaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Scott R. Shepherd
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
35 E. State Street
Media, PA  19063
Tel: 610-891-9880
sshepherd@sfmslaw.com

**Counsel for Plaintiff**

# EXHIBIT "A"

**GREENFIELD & GOODMAN LLC**
ATTORNEYS AT LAW
250 Hudson Street
8th Floor
New York, NY 10013
(917) 495-4446
Fax (212) 355-9592
email: whitehatrdg@earthlink.net

**Richard D. Greenfield**
*Also admitted to the Maryland
and Pennsylvania Bars*

January 22, 2013

Board of Directors
Las Vegas Sands Corp.
3355 Las Vegas Boulevard South
Las Vegas, NV 89109

Via FedEx Tracking No. 8996-7943-3206

Dear Members of the Board:

I am writing to you on behalf of my client, William Sokolowski, who presently owns, and who has owned continuously at material times, shares of the common stock of Las Vegas Sands Corp. ("LVS" or the "Company"). A copy of the relevant page and portion of my client's brokerage statement showing his current ownership of LVS shares is enclosed with this letter.

On behalf of my client, I demand that the Company sue Sheldon G. Adelson, the Company's officers and other executives involved in the Company's direct and indirect money laundering, payment of bribes and otherwise violating the reporting requirements of the Foreign Corrupt Practices Act and otherwise engaging in the wrongful conduct as set forth below, together with each of you for acquiescing in and/or covering up such conduct, causing it and/or sitting idly by while the Company concealed its likely exposure in the wake of such conduct.

It is also my understanding that, in order to cover up such wrongdoing and prevent the Company from recovering any of its damages from you and others, you have, directly or indirectly, engaged counsel to conduct a purported "investigation" of certain of such conduct and cause the issuance of what is commonly referred to in

1

corporate governance circles as a "whitewash report." The Company's legal counsel involved in such activity have, thus, been and are engaged in a further waste of LVS' corporate assets for the reasons set forth below. All of such conduct has caused and will continue to cause the Company and its shareholders massive economic damages and further damage to its reputation in amounts which cannot be presently calculated. This is especially so since the Company's own lawyers are arguing before, *inter alia*, the DOJ and the SEC, that it is LVS that should be paying fines and penalties rather than the responsible officers who are themselves the wrongdoers.[1]

## Bribery and Related Violations of Law

As you are well aware, Nevada gaming regulators (and, I believe, those of New Jersey as well) are investigating whether the Company's senior officers, including those under the direct supervision of Mr. Adelson, caused it to violate bribery laws through its dealings in mainland China. The Nevada Gaming Control Board's follows in the wake of longstanding investigations by the United States by the Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC"). These investigations appear to be based upon highly credible claims alleged in litigation by Steve Jacobs, previously an intimate of Mr. Adelson and former chief executive of Sands China Ltd, ("SCL"), the Company's largest subsidiary, majority-owned by it. He appears to be now cooperating with DOJ and SEC investigators, who are following up on his claims.

In the Jacobs suit, he alleges that he was fired after repeatedly clashing with Mr. Adelson over "Adelson's illegal demands". One of the principal of his alleged disagreements with Mr. Adelson was whether SCL should illegally hire and pay a Macau official as a local legal counsel as an intermediary to carry out questionable transactions, which Jacobs said raised the risk of violating the Foreign Corrupt Practices Act ("FCPA"). While Mr. Adelson has been quoted as saying "none of what he says is true and he can't prove it," Jacobs' allegations appear to be highly likely to be accurate.

Among other issues being investigated by regulators, tens of millions of dollars of the Company's funds (apparently $50 million or more) appear to have been spent improperly through politically-connected intermediaries in connection with the Adelson Center for U.S.-China Enterprise, a now-abandoned Beijing project,

---

[1] Upon information and belief, the Company's lawyers are also offering up "little fish," low-level employees who may have been caught up in the wrongdoing orchestrated by senior officers as LVS conduct.

2

purportedly intended as a resource for American companies pursuing ventures in China, but which, in fact, was to serve as a vehicle to publicize Mr. Adelson and his role in international business and to build up his reputation generally.

### Additional Wrongdoing in China

In addition to the violations of the FCPA, SEC reporting requirements and anti-money laundering laws referred to above, The Wall Street Journal on August 9, 2012, reported that "government and company investigations are looking into at least three transactions in mainland China unrelated to the company's Macau casino properties...Those transactions involve: a $50 million payment for real estate for the Adelson Center [referred to above,] sponsorship of a Chinese basketball team, and a contract for ferry service between Macau and Hong Kong."

Given the fact that you have made little or no public disclosure of these activities, the recipients of the funds involved or their business purposes, at this juncture, it is not clear to the public whether there was serious wrongdoing involved and the extent of it. Nevertheless, since presumably each of you is in possession of such facts, to the extent that serious illegal conduct and/or waste of LVS corporate assets occurred, I demand that you commence suit against those officers of the Company responsible for such conduct to recover its damages.

### Vulnerability to Loss of Casino Licenses or Other Sanctions

While corruption has been rampant in Macau, the only place where casino gambling in China is legal, the central government of China periodically has taken action to penalize companies and individuals which have been found to engage in corrupt activities, particularly bribery of governmental officials. It is inconceivable that the allegedly illegal activities of the Company and SCL are not on the "radar screen" of China's anti-corruption regulators and that they are vulnerable to having their legal activities curtailed or even eliminated. Macau is the only place in China where casinos are legal, and the Company's properties there provide the majority of its revenue. Thus, any corrupt or otherwise illegal conduct (such as illegal foreign exchange dealings) by SCL or LVS (through their respective executives) leaves the Company vulnerable to a material negative event.

As you know, LVS has already been fined approx. $1.63 million by China's foreign exchange regulator for alleged violations of currency rules. However, while the focus of the alleged conduct related to such relatively benign illegality, the underlying and far more serious wrongdoing appears to be payments made to a company controlled by Yang Saixin, a colleague of Mr. Adelson, which payments appear to have been used to buy influence in violation of, *inter alia*, the FCPA.

In additional to the vulnerability of the Company's operations in China, more likely, in the states of New Jersey and Nevada, based on the proven or suspected activities described in this letter, LVS and its senior executives including Mr. Adelson, are vulnerable to being found to be unsuitable to operate casinos in such states. These activities and the investigations in their wake have not only caused the Company substantial direct and indirect expenses but have rendered it vulnerable to massive damages should its casino licenses be placed in further jeopardy or lost.

## Misuse of LVS Assets by Mr. Adelson

While it has been widely reported in the news media that Mr. Adelson has made very substantial political and related donations in this country (to Republican presidential and other candidates) and in Israel (to the Likud party and its candidates) for his personal benefit, these media reports have not disclosed the extent to which LVS assets and facilities have also been similarly provided, directly and indirectly, for such purposes. Upon information and belief, the internal "investigation" being carried has avoided this issue despite what should be a material concern to the Company.

## The "Whitewash" Report

Following Jacobs' highly credible claims of material wrongdoing at the Company's highest levels and other reports of similar conduct that had become public, the LVS Board and its legal counsel sought to appear to be taking action in response to certain of the charges made, at least the most visible ones. It is my understanding that such legal counsel, concerned about protecting Mr. Adelson and certain of the Company's senior officers from personal civil and criminal charges, recommended to the Board and its Audit Committee the retention of a well-connected "blue chip" law firm, O'Melveny & Myers ("O&M"), to carry out what could be described as an investigation but used by the Board in an attempt to, *inter alia,* influence gaming regulators, the DOJ and SEC, and argue to these agencies that the wrongdoing involved merely lapses in controls and little or no serious wrongdoing by the senior management of the Company and SCL. The legal counsel that orchestrated such a charade wanted from O&M not an objective, disinterested report on the activities being "investigated," but an ultimate "whitewash" that would find some relatively minor faults and culpability by low-level employees but nothing which would incriminate Mr. Adelson and his minions. Indeed, William Weidner, the Company's former President, has said publicly that the purported "investigation" is a "distraction sideshow" to protect current management.

4

While such "investigation," which is still proceeding, is nominally being carried out by those of you on the Board's Audit Committee, in fact, all fact gathering is being done by O&M. In proceeding to carry out its mandate, O&M, contrary to what it knows would create the best record for the Company if it were to pursue claims against anyone, is selectively focusing on particular transactions and practices and skirting around those that would most likely address Mr. Adelson's own conduct or those acting for him. To insure that no record is created that would be readily usable in pursuing claims LVS may have against Mr. Adelson or anyone else, O&M did not conduct interviews of persons of interest under oath or cause transcripts of the interviews to be taken. Moreover, some of the most material of potential witnesses were not even interviewed by O&M.

According to The Wall Street Journal, a preliminary version of the "whitewash report" said the "company's controls and books and records were not sufficient," but even then, that "conclusion" appears to have been based on a review of transactions initiated by previous senior officers, including former president Weidner, from 2005 to 2009, rather than a comprehensive review of, *inter alia*, Jacobs' allegations and other reports available to you of serious wrongdoing. Consistent with the narrowly limitations of the "whitewash report," O&M is quoted as saying that there is "insufficient evidence to conclude that there were corrupt payments to PRC [People's Republic of China] officials." Not surprisingly, despite Jacobs' highly credible allegations, O&M and the Audit Committee have indicated that they have "not seen evidence that has caused [them] to doubt the integrity of current senior management," including, in particular, Mr. Adelson. It is not surprising that the "investigation" is not pursuing all material leads that would generate such evidence.

It is reasonable to conclude that when the final version of the "whitewash report" is prepared and disseminated in the name of the Audit Committee, it will be what counsel that initiated the "investigation" process had sought at the outset.

**Money Laundering**

In a quarterly filing with the SEC, LVS said it received subpoenas on August 1, 2012 from federal prosecutors seeking documents "relating to two prior customers."

According to The Wall Street Journal, a person familiar with that case said that the two former customers are Mexican national Zhenli Ye Gon, a pharmaceutical company owner now awaiting extradition to Mexico on drug charges, and American Ausaf Umar Siddiqui, a onetime vice president at Fry's Electronics convicted of taking kickbacks from that chain's suppliers.

5

Under post-9/11 reporting rules, casinos are required to report when they have reason to suspect that patrons' funds may have derived from illegal activity. Those reports are commonplace and confidential, and they are reviewed on a nearly daily basis by tax, drug-enforcement and other agencies.

According to news media accounts, LVS did not file such reports on Ye Gon and Siddiqui. Ye Gon lost more than $125 million gambling at Las Vegas casinos including LVS properties between 2004 and 2007, according to an affidavit from a United States Drug Enforcement Administration special agent filed in a now-dismissed federal case against Ye Gon. Siddiqui, meanwhile, transfered $121 million to the Company and MGM Resorts International casinos while earning only $225,000 from Fry's, prosecutors are quoted as having said in filings against Siddiqui.

Not surprisingly, I believe that the Company's ongoing internal "investigation" has not looked into these or other examples of serious money-laundering at the Company's facilities in violation of United States and other law, all of which has leaves the Company vulnerable to significant fines and other sanctions.

**The Demands Made:**

The demands made herein and the fact that they have been made should not be taken to mean that any of you is independent, disinterested or can properly and objectively deal with such demands, which you cannot. Similarly, O&M is also not disinterested or independent given the manner and circumstances of its retention, the manner in which its purported "investigation" is being carried out and its participation with those of you on the Board's Audit Committee in generating the "whitewash report."

This letter is being sent solely for the purpose of giving LVS the opportunity to commence the demanded litigation itself in the first instance and to do so promptly. Each of you is personally implicated in the alleged wrongdoing by, *inter alia*, your acquiescence in the wrongdoing alleged above and/or its cover-up, which is ongoing. The demands set forth in this letter have been made because, if they had not been, your counsel and/or counsel for the Company would seek to have dismissed any shareholder's derivative litigation that might be commenced in connection with the claims referred to herein had no pre-suit demand been made.

I look forward to hearing from you or your counsel within thirty days.

6

Sincerely yours,


Richard D. Greenfield

Enclosure

CC: Mr. William Sokolowski

RDG:gw

7