1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**James C. Mahan**
**U.S. District Judge**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| W. A. SOKOLOWSKI, on behalf of LAS VEGAS SANDS CORP., <br><br> Plaintiff(s), <br><br> v. <br><br> SHELDON G. ADELSON, et al. <br><br> Defendant(s). | 2:14-CV-111 JCM (NJK) |

**ORDER**

Presently before the court are motions to dismiss plaintiff's derivative complaint.  (Docs. # 1, 14, 21, 83).  Plaintiff filed responses to the motions to dismiss.  (Docs. # 39, 54, 99).  Defendants filed corresponding replies.  (Docs. # 52, 75, 109).

**I.     Background**

Plaintiff W.A. Sokolowski alleges the following claims: (1) violations of Section 14(a) of the Securities Exchange Act of 1934; (2) breach of fiduciary duty and waste of corporate assets; (3) unjust enrichment; (4) breach of the duty of candor; (5) breach of the duty of loyalty; (6) negligence; and (7) unjust enrichment against defendants Jason Ader, Irwin Chafetz, Victor Chaltiel, Charles Forman, Charles Koppelman, and Michael Leven – current or past members of the Sands' board of directors.   (Doc. # 1 at 49-54).   Plaintiff also alleges breach of contract against defendant PricewaterhouseCoopers, LLP ("PWC") partner Frederick Hipwell. *Id.* at 53-54.  Las Vegas Sands Corp. is a nominal defendant. *Id.* at 1.

These claims arise out of allegations that defendants: (1) permitted "overseas bribery, kickbacks, money laundering and other wrongful behavior . . . "; (2) initiated a pretextual investigation; (3) deluded investors; (4) violated the Bank Secrecy Act and the Foreign Corrupt Practices Act; (5) "[c]onceale[d] material facts with respect to purported audits . . ."; (6) misused assets; (7) released a "false and misleading" proxy statement; (8) allowed the utilization of "Sands' corporate assets to further the political interests of the [c]ompany's largest shareholders . . ."; (9) abandoned an investment in a Spanish gaming interest; (10) violated internal codes of conduct; and (11) "[e]nhanced the [i]ndividual [d]efendants' positions as directors and/or officers of Sands while providing each of them with substantial compensation, power, and prestige." *Id.* at 3-4.

As relief, plaintiff requests the following: (1) the appointment of a conservator; (2) the appointment of a chief compliance officer to oversee regulatory compliance; (3) a finding that the 2013 proxy statement "is false and misleading" and thus violates the board of directors' duty of candor; (4) a declaration that defendant board members "have breached their fiduciary duties and wasted Sands' assets . . ."; (5) an order for defendant board members to pay damages to Sands; (6) a declaration "that PWC has breached the terms of its engagements by Sands . . ."; (7) a declaration "that PWC has negligently performed its audits of the Company's year-end financial statements . . ."; (8) an order for defendants to disgorge unjust earnings; (9) an order for Sands "to take all necessary actions to reform and improve its corporate governance, compliance and internal control procedures . . ."; (10) an award for restitution from defendants; (11) "reasonable attorneys' fees, expert fees and other reasonable costs and expenses . . ."; and (11) any additional warranted relief. *Id.* at 54-55.

## II.    Legal Standard

Derivative litigation is born of equitable principles. *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983). This breed of litigation's purpose is to protect the value of a stockholder's shares through "obtaining a recovery for [a] corporation . . . ." *See id.*

Federal Rule of Civil Procedure 23.1 governs derivative litigation and states "[t]he complaint must . . . allege that the plaintiff was a shareholder or member at the time of the transaction

James C. Mahan
U.S. District Judge

- 2 -

1    complained of, or that the plaintiff's share or membership later devolved on it by operation of law."

2          Rule 23.1 has been interpreted to "require[] that a derivative plaintiff be a shareholder at the

3    time of the alleged wrongful acts and that the plaintiff retain ownership of the stock for the duration

4    of the lawsuit." *Lewis*, 719 F.2d at 1047; *see Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir.

5    2010).  "Rule 23.1's continuous share ownership requirement is procedural in nature and thus

6    applicable in diversity actions." *Kona Enter., Inc. v. Estate of Bishop*, 179 F.3d 767, 769 (9th Cir.

7    1999).

8          If a plaintiff does not possess company shares at the time of suit, that plaintiff cannot benefit

9    for suing on that company's behalf. *Lewis*, 719 F.2d at 1047.  Thus, to satisfy principles of equity,

10   a plaintiff must fulfill the continuous ownership requirement of Rule 23.1. *See id.*

11         "Strict compliance with Rule 23.1" is required "before a derivative suit can wrest control of

12   an issue from a board of directors." *See Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008).

13   Otherwise, the primacy of a board of directors' authority is "the general rule of American law. . . ."

14   *See id.*

15   **III.   Discussion**

16         Derivative shareholder actions are exceptional because "derivative actions brought by

17   minority stockholders could, if unconstrained, undermine the basic principle of corporate governance

18   that the decisions of a corporation . . . should be made by the board of directors or the majority of

19   shareholders." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 530 (1984).

20         "Because the shareholders' ability to institute an action on behalf of the corporation

21   inherently impinges upon the directors' power to manage the affairs of the corporation the law

22   imposes certain requirements on a stockholder's right to sue derivatively." *Spiegel v. Buntrock*, 571

23   A.2d 767, 772 (Del. 1990) (quoting *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 730

24   (Del. 1988)).

25         [A] board of directors is entitled to a presumption that they can and should
           be allowed to manage the business affairs of a corporation . . . [T]he balance
26         of power between derivative plaintiffs and the corporation (or its directors)
           in a derivative action is purposefully asymmetric, and the pleading standards
27         more exacting, because of this presumption and the fact that a derivative
           plaintiff seeks to vindicate the corporation's interests, not just its own."

28

James C. Mahan
U.S. District Judge                                      - 3 -

1   *In re Computer Scis. Corp. Derivative Litig.*, 244 F.R.D. 580, 591 (C.D. Cal. 2007) (citing *Spiegel*,

2   244 F.R.D. at 772-73).

3       Accordingly, plaintiffs in derivative shareholder cases face a higher standard of pleading.

4   *Lewis*, 719 F.2d at 1047.   Rule 23.1(b)(1) requires that plaintiff both "allege that [he] was a

5   shareholder or member at the time of the transaction complained of . . ." and that plaintiff has

6   maintained uninterrupted ownership over the shares since that purchase.

7       The complaint alleges that "[p]laintiff owns and has continuously owned common stock in

8   Sands beneficially during the period of the wrongdoing alleged herein." (Doc. # 1 at 36). However,

9   courts in the Ninth Circuit have interpreted Rule 23.1(b) as requiring plaintiff to precisely indicate the

10   stock acquisition date in the complaint.  *See in re RINO Int'l Corp. Derivative Litig.*, Nos. 2:10-cv-

11   02209, 2:10-cv-02244, 2011 WL 5245426, at *2 (D. Nev. Nov. 2, 2011); *in re Asyst Techs., Inc.*

12   *Derivative Litig.*, 2008 WL 2169021, at *1 (N.D. Cal. May 23, 2008); *in re Verisign, Inc., Derivative*

13   *Litig.*, 531 F.Supp.2d 1173, 1202 (N.D. Cal. 2007).

14       Not only does plaintiff fall far short of Rule 23.1's heightened pleading requirements, he fails

15   to address the issue of stock acquisition entirely.   Plaintiff neither explicitly indicates the stock

16   purchase date nor specifically states that he owned shares in Sands during the entirety of the conduct

17   contained of in the complaint.  (Doc. # 1 at 36).

18       Instead, plaintiff asserts the continuing wrong exception, stating:

19         [F]ederal courts have held that a plaintiff is entitled to bring suit for injuries
        suffered by the corporation . . . so long as the same series of events continued

20         after the plaintiff acquired his shares.   This continuing wrong doctrine is
        frequently considered to be an equitable exception to the contemporaneous

21         ownership rule.

22   (Doc. # 39 at 14) (citations omitted).

23       Plaintiff proffers no case law demonstrating the Ninth Circuit's adoption of the continuing

24   wrong exception.  (Doc. # 39 at 13-14).  Moreover, the court's own review produced little case law

25   demonstrating the Ninth Circuit's adoption of the continuing wrong doctrine.  *See Gulbrandsen ex rel.*

26   *Wells Fargo & Co. v. Stumpf*, No. C-12-05968, 2013 WL 1942158, at *8 (N.D. Cal. May 9, 2013)

27   ("[I]t appears the Ninth Circuit has yet to adopt the continuing wrong doctrine."); *Sprando ex rel. Int'l*

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

1  *Game Tech. v. Hart*, No. 3:10-cv-00415, 2011 WL 3055242, at *3 (D. Nev. July 22, 2011) ("We are

2  unable to find support in this Circuit that the continuing wrong exception is applicable.").

3     Therefore, additional factual allegations demonstrating continuity of ownership from the time

4  of the alleged wrongdoing to the present litigation are required here to fulfill Rule 23.1's standing

5  requirements for derivative litigation.  *See Lewis*, 719 F.2d at 1047.

6     Accordingly,

7     IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motions to

8  dismiss (docs. # 14, 21, 83) be GRANTED.  The complaint is dismissed without prejudice.  If plaintiff

9  wishes to file an amended complaint addressing the deficiencies identified herein, he must do so within

10 thirty (30) days of the issuance of this order.

11    DATED July 30, 2014.

13 _____

14 **UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**

- 5 -